THE FAIRHAVEN MARBLE AND MARBLEIZED SLATE COMPANY *v.* JOSEPH ADAMS, ANDREW N. ADAMS, AND DAVID B. COLTON.

[IN CHANCERY.]

*Water Privilege. Jurisdiction of the Court of Chancery.*

The bill set forth a past diversion of water by the defendants from the orator's mill, and alleged that the orator and the defendants were in controversy about their respective rights to draw water from a certain mill-pond, for the use of their several mills, and asked to have said rights ascertained and established, and prayed for an injunction against the defendants, to restrain their use of the water except in a certain way, and alleged that the defendants insisted that they were entitled to some of the water belonging to the orator, and that they were using the same according to their claim, and threatened to increase their use thereof; but did not allege that such use as was then made, or was threatened to be made, could not be fully compensated in damages at law; nor that any application had been made to the defendants to desist; nor that repeated and vexatious suits at law would be, or were believed to be, necessary, to maintain the rights infringed upon. *Held,* that the court of chancery had no jurisdiction of the case made by the bill.

APPEAL from the court of chancery.

The bill alleged,

" That on the second day of April, 1860, and for a long time prior thereto, one Joseph Adams and Ira C. Allen were the owners in fee of a certain water-power and premises therewith connected, on Castleton River, in the village of Fairhaven, and had a mill-dam erected across said river, creating a pond from which water was drawn to propel the wheels and machinery in a certain marble-mill situate upon the north side of said mill-dam, then owned and operated by them, and also to run and operate the wheels and machinery in a certain factory building situate upon the south side of said mill-dam, which said factory building and the premises thereto belonging, were also owned by the said Adams and Allen; that on said second day of April, the said Adams sold and conveyed to the said Allen, all his interest in said factory building and premises, by quit-claim deed duly executed, acknowledged, and delivered, together with the right to use the surplus water from the mill-pond of said Adams and Allen, for the propulsion of machinery in said factory at all times when the water is running over the dam, and not otherwise so as to injure or impede the motion of the wheels and machinery in the marble-mill of said Adams and Allen, or to injure and impede the motion of any other machinery which might thereafter be built or used in place of the wheels or machinery then used in said marble-mill, requiring no more water from said pond for its propulsion than the machinery or wheels then in use in said marble-mill, which consisted of three eight-feet overshot wheels, two of which had twelve-feet buckets, and the other a sixteen-feet bucket, and run twelve gangs of saws; that on the 26th day of June, 1866, the said Allen conveyed to Ryland Hanger, by deed of warranty, all the premises and water-power, factory and machinery, which were described in said deed to him from the said Adams, with the same provisions, reservations, and restrictions as to the use of water that were contained in said deed from said Adams; that on the 1st day of November, 1866, the said Hanger conveyed to James Pottle, of Fairhaven aforesaid, one equal and undivided fourth part of all the premises so conveyed to him by said Allen, and that on the 23d day of February, 1869, the said Hanger and Pottle, by their deed of that date duly executed, acknowledged, and delivered, sold and conveyed to the orator all the premises and water power which were conveyed to the said Hanger by said Allen as aforesaid, with the same provisions, restrictions, and reservations as to the use of water which were contained in said deed from said Allen to said Hanger; that on the 19th day of October, 1869, the said Allen conveyed to the said Adams, all his interest

in the marble-mill aforesaid and the premises and water-power thereto belonging, with a reservation as to the use of water in the words and figures following:  " Expressly reserving the surplus water from the mill-pond of Adams & Allen when the water runs over the dam, and not otherwise so as to injure or impede the motion of the wheels in the marble-mill of said Adams & Allen, or any other machinery that may hereafter be built or used in lieu of the present marble-mill machinery or wheels, requiring no more water for propulsion than the present machinery or wheels, consisting of three eight-feet overshot wheels, two of said wheels having twelve-feet buckets, and one a sixteen-feet bucket, and running twelve gangs of saws" ; that on the 2d day of April, 1860, and for a long time prior thereto and since that time, down to about the 9th of August, 1870, the marble-mill of said Adams & Allen, was run and operated by three eight-feet overshot wheels, two of which had twelve-feet buckets and the other a sixteen-feet bucket, and that said wheels propelled twelve slow gangs of saws, for the sawing of marble in said mill ; that the water was conveyed to said mill by means of a canal and flume extending from the said mill-pond to said wheels, and that the water from said canal and flume fell upon said wheels from the surface, over an apron built for that purpose nearly on a level with the surface of the water in said canal.

" That the orator had a right to use all the water from the mill-pond of Adams & Allen, except such quantity thereof as was required for the running of the wheels and machinery that were used in said marble-mill on the 2d day of April, 1860, as aforesaid, and that, relying upon said right, and believing that the quantity of water from said mill-pond belonging to them under such right, was amply sufficient to propel the machinery which they proposed to use in their business, they purchase ‡ the premises of said Hanger and Pottle as aforesaid, and engaged in the manufacture of slate and marble goods quite extensively, employing about one hundred men in and about their business, and manufacturing large quantities of goods from which they derived large profits ; that from the time they purchased said premises, down to the 9th of August, 1870, they had sufficient water from said mill-pond to run and operate their works upon said premises, and that the marble-mill of the defendants was also running during all that time, and using all the water necessary to propel the machinery therein as hereinbefore described ; that on or about the 9th of August, 1870, the said Adams and Andrew N. Adams and David B. Colton, having formed a partnership under the name of Joseph Adams & Sons, for the sawing of marble in the mar-

ble-mill formerly owned and occupied by said Adams & Allen, and well knowing that they had no right to change the wheels or machinery in said marble-mill so as to draw more water thereto from said mill-pond than was necessary to propel the wheels and machinery in use in said marble-mill on the 2d day of April, 1860, as described and set forth in said deed from the said Joseph Adams to the said Allen, and well knowing that they had no right to deepen the canal through which the water flowed from said mill-pond to said marble-mill, or to lower the head or change the method for the discharge of the water from said canal so as to increase the discharge thereof, or, to substitute any other or different wheels or machinery requiring more water for the propulsion of the same than was required for the propulsion of the wheels or machinery in use in the said marble-mill on the 2d day of April, 1860, contriving, &c., did, on or about the 9th day August, 1870, dig out and deepen the canal through which the water flows from said mill-pond to the marble-mill of the defendants, and did lower the head about eight feet lower than it was on the 2d day of April, 1860, and did change the method of discharging the water from the raceway, by putting in a tube, placed upon an angle so as to greatly increase the velocity and discharge of the water from the raceway, and did take out the three overshot wheels formerly in use in said marble-mill, and put in place thereof a five-feet cast-iron Tyler wheel, so called, and did take out the twelve gangs of slow saws formerly used in said marble-mill, and put in place thereof eight fast gangs of saws, called Merriam's patent gangs, and did also erect a machine shop, and run and operate the machinery therein by the water from said mill-pond ; that from the 9th day of August aforesaid, down to the present time, the defendants have discharged the water from said mill-pond through said canal and tubes, and have run and operated said eight gangs of fast saws by the said Tyler wheel, and have also run and operated the machinery in the machine shop as before stated, with the water from said mill-pond ; and the defendants threaten to put in additional machinery into said marble-mill, for the sawing of marble and slate, and otherwise to increase the use of the water from said mill-pond, to the great damage and injury of the orator.

" That the defendants, by deepening the canal through which the water is conveyed from said mill-pond to the marble-mill, and the changing of the method of discharging the water from the raceway by putting in a tube as aforesaid, and the lowering of the head, and the putting in of said Tyler wheel and the eight fast gangs of saws, and by running the machinery in said machine

shop, now use a much larger quantity of water from said mill-pond, to wit, three times more, than was required to run the wheels and machinery in the marble-mill of Adams & Allen on the 2d day of April, 1860; whereby the orator is wholly deprived of water for the propulsion of the machinery in its mill, except at occasional intervals, and has been and is obliged to allow its works to lie still and unused, except as it runs the same by steam; and in consequence of the unlawful use of the water from said mill-pond by the defendants, the orator has been compelled, at great expense, to put a steam-engine into its mill, to propel the machinery therein, and are compelled, at great expense, to run and operate the machinery in its mill by said steam-engine, when, if the defendants had not interfered with the rights of the orator to the surplus water from said mill-pond, in the manner aforesaid, and did not draw from said mill-pond any more water than was required to run the three eight-feet overshot wheels and the machinery in use in said marble-mill on the 2d day of April aforesaid, there would be an ample supply of water for the orator to run its mill at all times, and at a much less expense than it is now put to by the wrongful acts of the defendants."

Prayer, that the rights of the orator and the defendants to the water from said mill-pond, be ascertained and settled; that the damage sustained by the orator by the unlawful acts of the defendants, be ascertained and fixed; that the defendants be enjoined from using any more water from said mill-pond than sufficient to run three eight-feet overshot wheels—two with twelve-feet buckets, and one with a sixteen-feet bucket, and propelling twelve gangs of saws, such as were used by Adams & Allen, April 2d, 1860, or from using any other wheels or machinery in said marble-mill, that draw more water than the wheels and machinery in the marble-mill of Adams & Allen drew on the said 2d day of April; and for general relief.

The defendants demurred to the bill for want of equity; and the court, at the March term, 1872, sustained the demurrer, *pro forma*, and dismissed the bill.　Appeal by orator.

The counsel upon both sides discussed at length the construction to be given to the several deeds in the case; but as that question was not considered by the supreme court, that part of the briefs is not inserted.

*Prout, Simons & Walker*, for the orator.

The case presented by the bill falls within the customary exercise of equity jurisdiction.　Angell Water Courses, § 444 *et*

*seq.*, and cases cited. The invasion complained of, is necessarily continuous, and to operate indefinitely ; the extent of the injurious consequences is contingent, and doubtful of estimation ; wherefore, " the doubtfulness as to the extent of the prospective injury, and the impossibility of ascertaining the measure of just reparation, render such injury irreparable " at law. The continuance of the use of water on the part of the defendants, would entitle the orator to daily, successive suits at law. The wrong complained of in the bill, is a private nuisance, for which no adequate compensation can be afforded by damages only, and in regard to which " delay itself would be a wrong." The diversion as complained of, may in time become the foundation of an adverse right.

The parties have rights *in common* in the premises ; in regard to which, an equitable action affords " the only adequate means of ascertaining the respective rights of the parties, and of affording an ample remedy between them." *Lyon* v. *McLaughlin*, 32 Vt. 423 ; *Webb* v. *Portland Manufacturing Co.* 3 Sumner, 189 ; *Weston* v. *Cushing et al.* 45 Vt. 531 ; *Rock Manuf'g Co.* v. *Hough*, 39 Conn. 190. An injunction will be granted in vindication of the orator's *right*, when the act complained of would cause " irreparable mischief, or permanent injury, or would destroy a right." Kerr Injunctions, 393, 534. The act here complained of would do all three. Hilliard Injunctions, 448, and cases cited. If the right of the orator is uncertain, establishing and defining its extent upon a construction of the conveyance, is a ground of equity jurisdiction, under the circumstances stated in the bill. *Weston* v. *Cushing et al., supra.*

*Daniel Roberts*, for the defendants.

This case is clearly cognizable at law. The remedy at law is also complete. The question of right to the water, is one of construction of a deed. But this is not peculiarly a question for a court of equity to determine. The recovery of damages for a wrongful use, involving the inquiry as to the extent of actual use, belongs to a court of law. The case presents no extraordinary features calling for the aid of chancery. The lowering of the ca-

nal, change of wheels, &c., being done upon the defendants' land, were not unlawful acts, nor injurious to the orator, and no injunction could lie against the defendants therefor; nor is any such injunction prayed for. It is only when the defendants open their gates, and open them wide enough to draw more water than they are entitled to, that they do any wrong to the orator. But this is a simple trespass, for which an action at law lies as often as the wrong is repeated. An injunction does not lie in such case; certainly not until after the right has been first settled at law. 2 Story Eq. Jur. §§ 927–9; *Jerome* v. *Ross*, 7 Johns. Ch. 315; *Smith* v. *Pettingill*, 15 Vt. 82. The injunction prayed for is, not that the defendants restore their works to their former state; nor that they desist from a threatened injury to the *corpus* of the orator's property; but only that they be restrained from committing a detached trespass, which begins and ends with itself. *Prentiss* v. *Larnard*, 11 Vt. 135, is decisive against the orator. The case of *Lyon* v. *McLaughlin*, 32 Vt. 423, accords with our position.

The injunction prayed for in this case, is the principal thing; and is what, if anything, makes this case of equitable cognizance; and that failing, the case should fail. An injunction should be certain and definite in its command, so that the party enjoined may certainly know that the act he proposes to do is, or is not, a breach of the injunction. If this cannot be made certain, it is a sufficient reason for refusing the injunction. Suppose the defendants enjoined as prayed in this bill; then the defendants, at peril of imprisonment, are to keep within the injunction. But they say, our works do not require and we do not use more water than the limit named. Here arises a perpetually recurring question of fact, and, in the nature of the subject, a nice question, to be controverted and determined by the chancellor upon its special independent circumstances, as often as the orator shall choose to complain of a breach of the injunction.

The opinion of the court was delivered by

WHEELER, J. The orator has set forth in this bill a good cause of action for past diversion of water; but it is not claimed by any one, that this is sufficient to give the court of chancery ju-

risdiction. The orator has also set forth that the parties are in controversy about their respective rights to the water, and asked to have these rights ascertained and established. But this does not furnish sufficient ground for equitable interference. Courts of law can as well decide upon such rights as courts of equity, in cases where the questions concerning the rights would probably arise ; and an action at law upon the causes of action stated in this bill, would, without doubt, be such a case. The orator has also prayed for an injunction against the defendants ; and if, upon the facts alleged, one would be necessary or proper for his relief, as that relief could not be had at law, the necessity or propriety of it would give jurisdiction in equity. The orator has alleged in this behalf, that the defendants insist that they are entitled to some of the water belonging to the orator, and that they are using such water according to their claim, and that they threaten to increase their use of the water ; but has not alleged that such use as then made, or increased as threatened, could not be fully compensated for in damages at law ; nor that any application has been made to them to have them desist ; nor that repeated and vexatious suits at law would be, or were believed to be, necessary, in order to maintain the rights infringed upon. Injunctions are not granted in cases like this, to prevent disputes about rights ; but are to prevent numerous suits that would be vexatious, or irreparable injury or mischief. *Prentiss* v. *Larnard et al.* 11 Vt. 135. In *Lyon* v. *McLaughlin*, 32 Vt. 423, much relied upon by the orator, the facts showing the necessity for relief by injunction, were fully set forth, and BARRETT, J., there distinctly stated, that the ground of jurisdiction in such cases was not the establishment of doubtful rights that were in dispute, but that the relief which could be furnished only by a court of chancery, was necessary to it. For these reasons, it is considered that upon the facts alleged in the orator's bill, the court of chancery had no jurisdiction of the cause, and that the question discussed as to the construction and effect of the deeds in the cause, cannot now be properly decided.

Decree affirmed, and cause remanded.